JUDGE BATTS

13 CV 8892

STEWART W. LEE
Gottesman, Wolgel, Malamy,
Flynn & Weinberg, P.C.
11 Hanover Square
New York, New York 10005
Tel.: (212) 495-0100
E-Mail: slee@gottesmanlaw.com

*Attorneys for Plaintiff*
*Chang Hwa Commercial Bank Ltd*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

CHANG HWA COMMERCIAL BANK LTD.,
NEW YORK BRANCH,

              Plaintiff,

    v.

MARVIN TIEN,

              Defendants.

---------------------------------------------------------x

Civil Case No.

**COMPLAINT**

RECEIVED
DEC 1 6 2013
D.C. S.D. N.Y.

      Plaintiff CHANG HWA COMMERCIAL BANK, LTD. ("Chang Hwa Bank") for its

New York Branch ("NY Branch"), by its attorneys, Gottesman, Wolgel, Malamy, Flynn &

Weinberg, P.C., hereby alleges the following as and for its Complaint (the "Complaint")

against the Defendant named in the above captioned action:

### Nature of Action

    1.     This is an action to enforce the terms of the personal guaranty made, executed

and delivered by the Defendant to the Plaintiff, and to hold Defendant liable thereto.

### Jurisdiction and Venue

    2.     The Court has jurisdiction over this action based upon diversity of citizenship

pursuant to 28 U.S.C. § 1332.

1

3.    The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

4.    Venue is proper in the United States District Court for the Southern District of New York. Defendant contractually and irrevocably consented to the jurisdiction and venue of the state and federal courts located in the City of New York.

## The Parties

5.    Plaintiff Chang Hwa Bank is and was at all times relevant herein a foreign banking corporation organized and existing under the laws of the Republic of China (Taiwan), acting through its NY Branch having an office located at 685 Third Avenue, New York, NY 10017.

6.    Upon information and belief, Defendant Marvin Tien ("Tien") is a domiciliary of the State of California.

7.    Upon information and belief, Defendant Tien resides at 3796 16th Street, San Francisco, CA 94114.

8.    Upon information and belief, Defendant Tien, is and was at all relevant times herein, the managing member of Equilibrium LLC ("Equilibrium"), a corporation organized and existing under the laws of the Commonwealth of Massachusetts which maintained its principal place of business at all times relevant hereunder at 50 Congress Street, Boston MA 02109.

9.    Upon information and belief, Defendant Marvin Tien, is and was at all relevant times herein, the managing member of Fitness Entrepreneur LLC ("Fitness), a corporation organized and existing under the laws of the Commonwealth of Massachusetts

which maintained its principal place of business at all times relevant hereunder at 50 Congress Street, Boston MA 02109.

## Factual Allegations

### A. *The Renovation Term Loan and Credit Facility:*

10.    On or about April 3, 2006, Plaintiff Chang Hwa Bank NY Branch agreed to provide Fitness a commercial term loan and credit facility (the "Renovation Term Loan and Credit Facility") whereby Fitness may borrow and seek one or more loans up to, but not exceeding, the principal sum of $720,000.00 (the "Renovation Loan Commitment").

11.    On or about April 3, 2006, Plaintiff Chang Hwa Bank NY Branch and Fitness entered into and executed a Renovation and Term Loan Agreement dated April 3, 2006 (the "2006 Loan Agreement") which set forth and provided the terms for the Renovation Term Loan and Credit Facility.  A true and complete copy of the 2006 Loan Agreement is annexed hereto and made a part hereof as EXHIBIT A.

12.    On April 3, 2006, pursuant to the 2006 Loan Agreement, Fitness borrowed $720,000.00 from Chang Hwa Bank NY Branch.

13.    Contemporaneously with such borrowing, and to evidence the debt, Fitness, as the borrower of the 2006 Term Loan and Credit Facility, made, executed and delivered to Plaintiff Chang Hwa Bank NY Branch, as the Lender, a certain promissory note dated April 3, 2006 (the "2006 Note"), made payable to the order of Chang Hwa Bank NY Branch in the principal sum of $720,000.00 (the "Renovation Term Loan Principal Indebtedness").  A true and complete copy of the 2006 Note is annexed hereto and made a part hereof as EXHIBIT B.

14.    Contemporaneously with such borrowing, and to secure the 2006 Note and the debt evidenced thereby, Defendant Tien made, executed and delivered to Plaintiff Chang Hwa Bank NY Branch a personal guaranty of payment dated April 3, 2006 (the "2006 Guaranty"). A true and complete copy of the 2006 Guaranty is annexed hereto and made a part hereof as EXHIBIT C.

15.    On April 3, 2007, the 2006 Loan Agreement was amended and superceded by a certain Amendment to Renovation and Term Loan Agreement dated April 3, 2007 (the "2007 Loan Agreement Amendment"), entered into and executed by Chang Hwa Bank NY Branch and Fitness.  A true and complete copy of the 2007 Loan Agreement Amendment is annexed hereto and made a part hereof as EXHIBIT D.

16.    Pursuant to the terms of the 2007 Loan Agreement Amendment, the original maximum Renovation Loan Commitment of $720,000.00 under the 2006 Loan Agreement was increased to, but not exceeding, the principal sum of $920,000.00.

17.    On April 3, 2007, the 2006 Note was also amended, restated and replaced by an Amended and Restated Note dated April 3, 2007 (the "2007 Amended Note"), made, executed and delivered by Fitness made payable to the order of Plaintiff Chang Hwa Bank NY Branch in the principal sum of $920,000.00.   A true and complete copy of 2007 Amended Note is annexed hereto and made a part hereof as EXHIBIT E.

18.    The 2006 Term Loan and Credit Facility, made pursuant to the 2006 Loan Agreement as amended by the 2007 Loan Agreement Amendment, and as evidenced by the 2006 Note, as amended and replaced by the 2007 Amended Note, and all of the covenants, conditions, duties and obligations thereunder including the indebtedness owed by Fitness to Plaintiff Chang Hwa Bank NY Branch, were subsequently assumed by Equilibrium pursuant

to a Modification and Assumption Agreement dated June 13, 2008 (the "2008 Assumption Agreement"), entered into and executed by Equilibrium as the new Borrower, Fitness as the original Borrower, and Plaintiff Chang Hwa Bank NY Branch as the Lender. A true and complete copy of the 2008 Assumption Agreement is annexed hereto and made a part hereof as EXHIBIT F.

19.    Contemporaneously with the execution of 2008 Assumption Agreement, and in connection therewith, Equilibrium, as the new Borrower made, executed and delivered a promissory note dated June 13, 2008 (the "2008 Note") made payable to Plaintiff Chang Hwa Bank NY Branch in the sum of $920,000.00. A true and complete copy of the 2008 Note is annexed hereto and made a part hereof as EXHIBIT G.

20.    Contemporaneously with the execution of the 2008 Assumption Agreement, and to secure the 2008 Note and the debt evidenced thereby, Defendant Tien made, executed and delivered to Plaintiff Chang Hwa Bank NY Branch a personal guaranty of payment (the "2008 Guaranty"). A true and complete copy of the 2008 Guaranty is annexed hereto and made a part hereof as EXHIBIT H.

21.    Defendant Tien also executed a Consent of Guarantors dated June 13, 2008 (the "2008 Consent"), whereby Defendant Tien consented to the 2008 Assumption Agreement, and confirmed and agreed that the 2006 Guaranty continues and remains in full force and effect, and ratified same to guarantee the increased Renovation Term Loan Principal Indebtedness of $920,000.00. A true and complete copy of the 2008 Consent is part of the 2008 Assumption Agreement which is annexed hereto and made a part hereof as EXHIBIT F.

22.     Pursuant to the terms of the 2008 Assumption Agreement and the 2008 Note, the entire indebtedness evidenced by, and due, owing or payable under the 2008 Note matured and was to be paid in full to Plaintiff Chang Hwa Bank NY Branch on April 3, 2009 (the "Renovation Term Loan Maturity Date").

23.     By a letter agreement entered into and executed by Chang Hwa Bank NY Branch and Equilibrium dated April 21, 2009 (the "2009 Letter Agreement"), the Renovation Term Loan Maturity Date was extended from April 3, 2009 to July 3, 2009. A true and complete copy of the 2009 Letter Agreement is annexed hereto and made a part hereof as EXHIBIT I.

24.     Defendant Tien also executed the 2009 Letter Agreement, consenting to the amendments and changes made by the 2009 Letter Agreement and reaffirming his personal guaranty.

25.     On July 3, 2009, the 2006 Loan Agreement, as amended by the 2007 Loan Agreement Amendment, assumed and modified by the 2008 Assumption Agreement, and amended by the 2009 Letter Agreement, was further amended and superceded by the Amendment to Renovation and Term Loan Agreement dated July 3, 2009 (the "2009 Loan Agreement Amendment"), entered into and executed by Chang Hwa Bank NY Branch and Fitness. A true and complete copy of the 2009 Loan Agreement Amendment is annexed hereto and made a part hereof as EXHIBIT J.

26.     The 2009 Loan Agreement Amendment amended and extended the Renovation Term Loan Maturity Date from July 3, 2009 to July 3, 2010.

27.    Contemporaneously with the execution of the 2009 Loan Agreement Amendment, Defendant Tien executed a Consent of Guarantors dated June 3, 2009 (the "2009 Consent"), whereby Defendant Tien consented to the 2009 Loan Agreement Amendment, and confirmed and agreed that the 2008 Guaranty continues and remains in full force and effect, and ratified same in all respects. A true and complete copy of the 2009 Consent is part of the 2009 Loan Agreement Amendment which is annexed hereto and made a part hereof as EXHIBIT J.

28.    By a letter agreement entered into and executed by Chang Hwa Bank NY Branch and Equilibrium dated February 2, 2010 (the "2010 Letter Agreement"), the due dates for the scheduled principal payments required by the 2009 Loan Agreement Amendment was amended and changed. Equilibrium's obligation to pay the accrued interest on the outstanding principal balance continued and remained unchanged. The Renovation Term Loan Maturity Date also remained unchanged and stayed as July 3, 2010. A true and complete copy of the 2010 Letter Agreement is annexed hereto as EXHIBIT K and made a part hereof.

29.    Pursuant to 2010 Letter Agreement, Equilibrium, the Borrower, agreed and became obligated to pay Chang Hwa Bank NY Branch an $1,100.00 amendment fee which remains unpaid as of the date hereof (the "Renovation Term Loan Unpaid Amendment Fee").

30.    Defendant Tien also executed the 2010 Letter Agreement, consenting to the amendments and changes made by the 2010 Letter Agreement and reaffirming his personal guaranty.

7

31.     On July 3, 2010, the Renovation Term Loan Maturity Date, all of the indebtedness owed under the 2006 Loan Agreement and 2006 Note, as amended by the 2007 Loan Agreement Amendment and 2007 Amended Note, as assumed by the 2008 Assumption Agreement and 2008 Note, and further amended by the 2009 Letter Agreement, the 2009 Loan Agreement Amendment, and 2010 Letter Agreement (collectively referred hereinafter as the "Renovation Term Loan Agreement and Note"), including but not limited to, the outstanding Renovation Term Loan Principal Indebtedness and all unpaid accrued interest, fees, charges and expenses, became due and payable in full.

32.     Equilibrium, the Borrower under the Renovation Term Loan Agreement and Note, failed to repay the principal balance, interest, fees, charges and expenses on the Renovation Term Loan Maturity Date and continues to remain in default of such default.

33.     As of the date of the Renovation Term Loan Maturity Date, the unpaid outstanding principal balance due, owing and payable under the Renovation Term Loan Agreement and Note was, and still is, $913,750.00 (the "Renovation Term Loan Outstanding Principal Balance").

34.     Under the terms of the Renovation Term Loan Agreement and Note, interest on the outstanding Renovation Term Loan Principal Indebtedness accrues at a fixed rate of 1.5% above the prime rate per annum from April 3, 2006 until April 3, 2007, when the 2007 Loan Agreement Amendment amended the interest rate 1.0% above the prime rate per annum.  The interest is computed on the basis of a 360 day year for the actual number of days elapsed.

35.    Pursuant to the Renovation Term Loan Agreement and Note, and specifically, the 2007 Loan Agreement Amendment:

> The Borrower shall pay interest only to the Bank on the outstanding and unpaid advances of principal of the Loan made under this Agreement at a rate per annum equal to the Prime Rate plus one percent (1.0%). Interest on the loan shall be calculated on the basis of a year of three hundred sixty (360) days for the actual number of days elapsed.

*2007 Loan Agreement Amendment*, Article 1(f). *See also* ***2006 Loan Agreement***, Section 2.05(1).

36.    Section 2.05 of the 2006 Loan Agreement provides that "Interest on the Loan shall be paid in immediately available funds at the Lending Office on the first day of each month and on the [Maturity] Date." ***2006 Loan Agreement***, Section 2.05(2).

37.    The Prime Rate is defined under the 2006 Loan Agreement as the "rate of interest published by the Wall Street Journal as the 'prime rate' (which rate is not intended to be the lowest rate of interest charged by the Bank to its borrowers)." ***2006 Loan Agreement***, Section 1.01.

38.    The last interest payment received on the account of Equilibrium for the subject loan was on June 30, 2010 and applied to the interest payment due and owing for the period from April 1, 2010 to and including April 30, 2010.

39.    No payments were received on the account of the Equilibrium for the subject loan for the interest payment due and owing for the period from May 1, 2010 to and including July 2, 2010 (the "Renovation Term Loan Unpaid Interest Period").

40.    Based on the Renovation Term Loan Outstanding Principal Balance, which is $913,750.00, the Prime Rate then in effect, which was 3.25% per annum, and the rate of interest provided in the Renovation Term Loan Agreement and Note, specifically, the 2007

Loan Agreement Amendment, which is the Prime Rate plus one percent (1%) or 4.25% per annum, the unpaid interest due, owing and payable under the Renovation Term Loan Agreement and Note for Renovation Term Loan Unpaid Interest Period is $6,796.02 (the "Renovation Term Loan Unpaid Interest".

41. The Borrower, Equilibrium, also agreed that the payments required under the Renovation Term Loan Agreement and Note shall be paid by Equilibrium without any set-off or counterclaim and free of and without deduction for any taxes or other charges of any kind except as authorized by law.

42. The Borrower, Equilibrium further agreed that if any payment due under the Renovation Term Loan Agreement and Note is made more than ten (10) days after its due date, that Equilibrium shall be liable for a late charge equal to five percent (5%) of such overdue payment, which late charge is payable on demand.

43. Due to interest payments being made more than 10 days after its due date in January 2010, February 2010, March 2010, April 2010, May 2010, June 2010 and July 2010, the Borrower, Equilibrium, incurred and is liable for late charges in the aggregate sum of $987.04 (the "Renovation Term Loan Late Charges").

44. Equilibrium further agreed that if "[a]ny payment is not paid within ten (10) days of its due date (at maturity, by acceleration or otherwise) [such payment] shall bear interest thereafter until paid in full, payable on demand, at a rate per annum of five percent (5.0%) above the Bank's prime rate until payment is made in full (whether before or after judgment)." *2006 Loan Agreement*, Section 2.05(3).

45. Due to the non-payment of the Renovation Term Loan Outstanding Principal Balance, the Renovation Term Loan Unpaid Interest and the Renovation Term Loan Late

Charges on the July 3, 2010, the Renovation Term Loan Maturity Date, the Borrower, Equilibrium incurred and is liable for default interest from July 3, 2010 to and until same is paid in full, whether before or after judgment.

46.    As of the date of this Complaint, the unpaid default interest due, owing and payable under the Renovation Term Loan Agreement and Note is, $265,881.41, plus $211.18 per each day after December 13, 2013 (the "Renovation Term Loan Default Interest").

47.    Equilibrium also agreed to pay on demand all of Chang Hwa's costs and expense, including reasonable counsel fees, in connection with the collection of any sums due to Chang Hwa and the enforcement of Chang Hwa's rights under the Renovation Term Loan Agreement and Note.

48.    As of the date of this Complaint, Equilibrium, the Borrower, owes and is liable to Plaintiff Chang Hwa Bank NY Branch for the following sums under and pursuant to the Renovation Term Loan Agreement and Note, plus $211.18 for each day after December 13, 2013:

| | |
|---|---:|
| Outstanding Principal Balance: | $913,750.00 |
| Unpaid Interest from May 1, 2010 to and including July 3, 2010: | $6,796.02 |
| Late Charges for January 2010 to July 2010: | $987.04 |
| Default Interest from July 3, 2010 (the Maturity Date) to and including December 13, 2013: | $265,881.41 |
| Unpaid Amendment Fee from the 2010 Letter Agreement | $1,100.00 |
| **TOTAL:** | **$1,188,514.47** |

### B. *The Term Loan:*

49.    On or about July 23, 2009, Plaintiff Chang Hwa Bank NY Branch agreed to provide Equilibrium a commercial term loan (the "Term Loan") in the principal sum of $450,000.00 (the "Term Loan Commitment").

50.    On or about July 23, 2009, Plaintiff Chang Hwa Bank NY Branch and Equilibrium entered into and executed a Term Loan Agreement dated July 23, 2009 (the "2009 Loan Agreement") which set forth and provided the terms for the Term Loan. A true and complete copy of the 2009 Loan Agreement is annexed hereto and made a part hereof as EXHIBIT L.

51.    On July 23, 2009, pursuant to the 2009 Loan Agreement, Equilibrium borrowed $450,000.00 from Chang Hwa Bank NY Branch.

52.    Contemporaneously with such borrowing, and to evidence the debt, Equilibrium, as the borrower of the Term Loan, made, executed and delivered to Chang Hwa Bank NY Branch, as the Lender, a Term Loan Note dated July 23, 2009 (the "2009 Term Loan Note"), made payable to the order of Chang Hwa Bank NY Branch in the principal sum of $450,000.00 (the "Term Loan Principal Indebtedness"). A true and complete copy of the 2009 Term Loan Note is annexed hereto and made a part hereof as EXHIBIT M.

53.    Contemporaneously with such borrowing, and to secure the 2009 Term Loan Note and the debt evidenced thereby, Defendant Tien made, executed and delivered to Plaintiff Chang Hwa Bank NY Branch a personal guaranty of payment dated July 23, 2009 (the "2009 Guaranty"). A true and complete copy of the 2009 Guaranty is annexed hereto and made a part hereof as EXHIBIT N.

54.     All of the indebtedness owed under the 2009 Term Loan Agreement and the 2009 Term Loan Note (collectively referred hereinafter as the "Term Loan Agreement and Note"), including but not limited to, the outstanding Term Loan Principal Indebtedness and all unpaid accrued interest, fees, charges and expenses, became due and payable in full on July 23, 2010 (the "Term Loan Maturity Date").

55.     Equilibrium, the Borrower under the Term Loan Agreement and Note, failed to repay the principal balance, interest, fees, charges and expenses on the Term Loan Maturity Date and continues to remain in default of such payment.

56.     As of the date of the Term Loan Maturity Date, the unpaid outstanding principal balance due, owing and payable under the Term Loan Agreement and Note was, and still is, $450,000.00 (the "Term Loan Outstanding Principal Balance").

57.     Under the terms of the Term Loan Agreement and Note, interest on the outstanding Term Loan Principal Indebtedness accrued at a fixed rate of 1.00% above the prime rate per annum during the term of the Term Loan, and computed on the basis of a 360 day year for the actual number of days elapsed.

58.     Specifically, the 2009 Term Loan Agreement states:

> Interest on the Loan shall be paid at an annual rate equal to one percent (1.0%) in excess of the prime rate of interest published from time to time in The Wall Street Journal (or any successor thereto) as the base rate of interest on corporate loans (the "Prime Rate"), from the day the Loan is made until the Maturity Date. Any change in the interest rate resulting from a change in the Prime Rate shall be effective on the date of such change. Interest shall be calculated on the basis of a 360 day year for the actual number of days elapsed and shall continue to accrue before and after the Maturity Date until receipt by the Bank of the unpaid principal balance of the Note (as hereinafter defined). Interest shall be paid on the first day of each month and on the Maturity Date. Prepayments may be made on the first day of any month without premium or penalty.

*Term Loan Agreement*, ¶ 1(B).

59.    The last interest payment received on the account of Equilibrium for the subject loan was on June 30, 2010 and applied to the interest payment due and owing for the period from April 1, 2010 to and including April 30, 2010.

60.    No payments were received on the account of the Equilibrium for the subject loan for the interest payment due and owing for the period from May 1, 2010 to and including July 2, 2010 (the "Term Loan Unpaid Interest Period").

61.    Based on the Term Loan Outstanding Principal Balance, which is $450,000.00, the Prime Rate then in effect, which was 3.25% per annum, and the rate of interest provided in the Term Loan Agreement and Note, which is the Prime Rate plus one percent (1%) or 4.25% per annum, the unpaid interest due, owing and payable under the Term Loan Agreement and Note for Term Loan Unpaid Interest Period is $4,409.38 (the "Term Loan Unpaid Interest".

62.    The Borrower, Equilibrium, also agreed that the payments required under the Term Loan Agreement and Note shall be paid by Equilibrium without any set-off or counterclaim and free of and without deduction for any taxes or other charges of any kind except as authorized by law.

63.    The Borrower, Equilibrium, further agreed that if any payment due under the Term Loan Agreement and Note is made more than ten (10) days after its due date, that Equilibrium shall be liable for a late charge equal to five percent (5%) of such overdue payment, which late charge is payable on demand.

64.     Due to interest payments being made more than 10 days after its due date in January 2010, February 2010, March 2010, April 2010, May 2010, June 2010 and July 2010, the Borrower, Equilibrium, incurred and is liable for late charges in the aggregate sum of $539.22 (the "Term Loan Late Charges").

65.     Pursuant to the terms of the 2009 Term Loan Agreement, Equilibrium agreed that "[ ]after the Maturity Date (whether by acceleration or otherwise), the Borrower shall pay to the Bank interest until payment in full of the Loan (after as well as before judgment or the filing of a petition of bankruptcy) at a rate that is the lesser of (1) five percent (5%) per annum above the prime rate [set] by Bank or (2) the maximum amount allowed by applicable law." *2009 Term Loan Agreement*, ¶ 1(C).

66.     Due to the non-payment of the Term Loan Outstanding Principal Balance, the Term Loan Unpaid Interest and the Term Loan Late Charges on the July 23, 2010, the Term Loan Maturity Date, the Borrower, Equilibrium incurred and is liable for default interest from July 23, 2010 to and until same is paid in full, whether before or after judgment.

67.     As of the date of this Complaint, the unpaid default interest due, owing and payable under the Term Loan Agreement and Note is, $129,176.90, plus $104.26 per each day after December 13, 2013 (the "Term Loan Default Interest").

68.     Equilibrium also agreed to pay on demand all of Chang Hwa's costs and expenses, including reasonable counsel fees, in connection with the collection of any sums due to Chang Hwa and the enforcement of Chang Hwa's rights under the Term Loan Agreement and Note.

69.     As of the date of this Complaint, Equilibrium, the Borrower, owes and is liable to Plaintiff Chang Hwa Bank NY Branch for the following sums under and pursuant to the Term Loan Agreement and Note, plus $104.26 for each day after December 13, 2013:

| | |
|---|---|
| Outstanding Principal Balance: | $450,000.00 |
| Unpaid Interest from May 1, 2010 to and including July 3, 2010: | $4,409.38 |
| Late Charges for January 2010 to July 2010: | $539.22 |
| Default Interest from July 3, 2010 (the Maturity Date) to and including December 13, 2013: | $129,176.90 |
| **TOTAL:** | **$584,125.50** |

## C. *Default Notice*:

70.     By a letter dated December 21, 2010, Chang Hwa's counsel declared Equilibrium to be in default of both the Renovation Term Loan Agreement and Note as well as the Term Loan Agreement and Note (collectively, the "Loan Agreements and Notes"), and the payments due thereunder (the "Default and Demand Letter").  A true and complete copy of the Default and Demand Letter is annexed hereto and made a part hereof as EXHIBIT O.

71.     By the Default and Demand Letter, Chang Hwa demanded that Equilibrium pay the entire Renovation Term Loan Outstanding Principal Balance, the Term Loan Outstanding Principal Balance, all accrued interest, late charges and fees, together with all the other fees, costs and expenses incurred by the Chang Hwa (collectively, "Entire Indebtedness") no later than January 4, 2011.

72.     The Default and Demand Letter was also addressed to, and sent to, Defendant Tien.

73.    Notwithstanding the Default and Demand Letter, no payment was received by Chang Hwa Bank NY Branch on the account of Equilibrium, the Renovation Term Loan and Credit Facility and the Term Loan (collectively, the "Loans"), on January 4, 2011 or at any time thereafter.

74.    As of date of this Complaint, Equilibrium remains in default of its obligations under the Loan Agreements and Notes.

### AS AND FOR A FIRST CAUSE OF ACTION
### (BREACH OF THE 2006 GUARANTY)

75.    Plaintiff Chang Hwa repeats and realleges paragraph 1 through 74 above with the same force and effect as if the allegation plead therein are separately plead and set forth hereinafter in full and at length.

76.    As consideration and to induce Chang Hwa Bank NY Branch to enter into the 2006 Loan Agreement and make the loans therein, Defendant Tien made, executed and delivered the 2006 Guaranty in favor Chang Hwa Bank NY Bank.

77.    Pursuant to Section 1 of the 2006 Guaranty, Defendant Marvin Tien, as the GUARANTOR:

> … unconditionally and irrevocably guarantees to the Bank [CHANG HWA] … as primary obligor and not merely as surety, the punctual payment of all sums now owing or that may in the future be owing by the Borrower with respect to the Transactions, when the same are due and payable, whether on demand, at stated maturity, by acceleration or otherwise, and whether for principal, interest, purchase price, margin or additional payments, fees, expenses, costs of replacement transactions, indemnification or otherwise (all of the foregoing sums being the "Liabilities"). The Liabilities include, without limitation, interest accruing after the commencement of a proceeding under bankruptcy, insolvency or similar laws of any jurisdiction at the rate or rates provided in the Transaction Documents. This Guaranty is a guaranty of payment and not of collection only. The Bank shall not be required to exhaust any right or remedy or take any action against the Borrower or any other person or entity or collateral.

*2006 Guaranty*, Section 1.

78.    The term "Transaction" in the 2006 Guaranty, and what Defendant Tien agreed to guarantee included, but not limited to, "… agreements or arrangements with, providing for credit extensions or financial accommodations to the Borrower of any kind whatsoever, including but not limited to the making of loans, advances or overdrafts, whether or not secured, discount or purchase of notes, securities or other instruments or property, creation of acceptance, issuance or confirmation of letters of credit, guaranties or indemnities, entering into foreign exchange or precious metals contracts or interest rate or currency swaps or protective agreements or any other kind or contract or agreements under which the Borrower may be indebted to the Bank in any manner…". *2006 Guaranty*, p.1.

79.    Section 2 of the 2006 Guaranty provides that

> The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of: (a) any change n the time, manner or place of payment, of or in any other terms o, all or any of the Transaction Documents or Liabilities, or any other amendment or waiver of or any consent to departure from any of the terms of any Transaction Document or Liability; (b) any release or amendment or waiver of, or consent to departure from, any other guaranty or support document, or any exchange, release or nonperfection of any collateral, for all or any of the Transaction Documents or Liabilities; (c) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure or otherwise affect any term of any Transaction Document or Liability; (d) without being limited by the foregoing, any lack of validity or enforceability of any Transaction Document or Liability or any failure to receive any governmental approval relating thereto; (e) any other defense whatsoever that might constitute a defense available to, or discharge of, the Borrower or a guarantor (including, without limitation, the bankruptcy or reorganization of the Borrower).

*2006 Guaranty*, Section 2.

80.    Pursuant to Section 3 of the 2006 Guaranty, it "is a continuing guaranty and shall remain in full force and effect until payment in full of all Liabilities and other amounts payable under this Guaranty and until the Transactions are no longer in effect. *2006 Guaranty*, Section 3.

81.    According to Section 11 of the 2006 Guaranty, the "remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law." *2006 Guaranty*, Section 11.

82.    Pursuant to Section 13 of the 2006 Guaranty, "Guarantor waives presentment, notice of dishonor, protest, notice of acceptance of this Guaranty or incurrence of any Liability and any other formality with respect to any of the Liabilities of this Guaranty." *2006 Guaranty*, Section 13.

83.    According to Section 14 of the 2006 Guaranty, "[n]o failure on the part of the Bank to exercise, and no delay in exercising, any rights under this Guaranty shall operate as a waiver or preclude any other or further exercise thereof or the exercise of any other right." *2006 Guaranty*, Section 14.

84.    Pursuant to Section 15 of the 2006 Guaranty, "Guarantor shall reimburse the Bank on demand for all costs, expenses and charges, including without limitation fees and charges of legal counsel, for the Bank in connection with the performance or enforcement of this Guaranty." *2006 Guaranty*, Section 15.

85.    According to Section 18 of the 2006 Guaranty, the 2006 Guaranty "SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES." *2006 Guaranty*, Section 18 (Capitalization in Original).

86.     Section 18 also states "THE GUARANTOR IRREVOCABLY CONSENTS TO THE NONEXCLUSIVE JURISDICTION AND VENUE OF THE STATE OR FEDERAL COURTS LOCATED IN THE CITY OF NEW YORK." *2006 Guaranty*, Section 18 (Capitalization in Original).

87.     Pursuant to Section 19 of the 2006 Guaranty, "[e]ach Guarantor shall be severally as well as jointly liable hereunder …". *2006 Guaranty*, Section 19.

88.     No formal demand or notice is required under the 2006 Guaranty.

89.     The term "New Borrower" as used in the 2006 Guaranty initially referred to Fitness, and following and pursuant to the 2008 Assumption Agreement and the 2008 Consent of the Guarantor, refers to Equilibrium.

90.     Notwithstanding that no demand or notice is required under the 2006 Guaranty, by the Default and Demand Letter, Chang Hwa Bank NY Branch, through its counsel, notified Defendant Tien of: (i) Equilibrium's non-payment of the Loans, and (ii) Equilibrium's default under the Loan Agreements and Notes.

91.     By that same Default and Demand Letter, Chang Hwa Bank NY Branch, through its counsel, demanded Defendant Tien, jointly with or severally from Equilibrium and other guarantors, to immediately pay the Entire Indebtedness no later than January 4, 2011.

92.     Notwithstanding the Default and Demand Letter, no payment was received by Chang Hwa Bank NY Branch from or for Marvin Tien on January 4, 2011 or at any time thereafter.

93.    Defendant Tien has breached the 2006 Guaranty and defaulted on his obligations under the 2006 Guaranty by failing to pay the Entire Indebtedness, and remain in default as of the date hereof.

94.    As of the date of this Complaint, Defendant Tien, as the Guarantor, owes and is liable to Plaintiff Chang Hwa Bank NY Branch for the following sums under and pursuant to the 2006 Guaranty, plus $315.44 for each day after December 13, 2013:

| | |
|---|---|
| Total Outstanding Principal Balance for the Loans: | $1,363,750.00 |
| Total Unpaid Interest for the Loans: | $11,205.40 |
| Total Late Charges for the Loans: | $1,526.26 |
| Default Interest for the Loans calculated to and including December 13, 2013: | $391,058.31 |
| Unpaid Amendment Fee from the 2010 Letter Agreement | $1,100.00 |
| **TOTAL:** | **$1,768,639.97** |

95.    By reason of the foregoing, Plaintiff Chang Hwa Bank NY Branch is entitled to a judgment against Defendant Marvin Tien in the sum of $1,768,639.97 plus default interest at the per diem rate of $315.44 for each day accruing for each day after December 13, 2013, together with all costs and expenses, including attorneys' fees, incurred by Chang Hwa Bank NY Branch in connection with the collection of any sums due to Chang Hwa Bank NY Branch and the enforcement of its rights under the Loan Agreements and Notes, and the 2006 Guaranty.

## AS AND FOR A SECOND CAUSE OF ACTION
## (BREACH OF THE 2008 GUARANTY)

96.     Plaintiff Chang Hwa repeats and realleges paragraph 1 through 95 above with the same force and effect as if the allegation plead therein are separately plead and set forth hereinafter in full and at length.

97.     As consideration and to induce Chang Hwa Bank NY Branch to agree to 2008 Assumption Agreement and the modifications, terms and provisions made therein, Defendant Tien made, executed and delivered the 2008 Guaranty in favor Chang Hwa Bank NY Bank.

98.     Pursuant to Section 1 of the 2008 Guaranty, Defendant Marvin Tien, as the GUARANTOR:

> ... unconditionally and irrevocably guarantees to the Bank [CHANG HWA] ... as primary obligor and not merely as surety, the punctual payment of all sums now owing or that may in the future be owing by the New Borrower with respect to the Transactions, when the same are due and payable, whether on demand, at stated maturity, by acceleration or otherwise, and whether for principal, interest, purchase price, margin or additional payments, fees, expenses, costs of replacement transactions, indemnification or otherwise (all of the foregoing sums being the "Liabilities"). The Liabilities include, without limitation, interest accruing after the commencement of a proceeding under bankruptcy, insolvency or similar laws of any jurisdiction at the rate or rates provided in the Transaction Documents. This Guaranty is a guaranty of payment and not of collection only. The Bank shall not be required to exhaust any right or remedy or take any action against the New Borrower or any other person or entity or collateral.

*2008 Guaranty*, Section 1.

99.     The term "Transaction" in the 2008 Guaranty, and what Defendant Tien agreed to guarantee included, but not limited to, "... agreements or arrangements with, providing for credit extensions or financial accommodations to the New Borrower of any kind whatsoever, including but not limited to the making of loans, advances or overdrafts, whether or not secured, discount or purchase of notes, securities or other instruments or

property, creation of acceptance, issuance or confirmation of letters of credit, guaranties or indemnities, entering into foreign exchange or precious metals contracts or interest rate or currency swaps or protective agreements or any other kind or contract or agreements under which the New Borrower may be indebted to the Bank in any manner…". ***2008 Guaranty***, p.1.

100.    Section 2 of the 2008 Guaranty provides that

> The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of: (a) any change n the time, manner or place of payment, of or in any other terms o, all or any of the Transaction Documents or Liabilities, or any other amendment or waiver of or any consent to departure from any of the terms of any Transaction Document or Liability; (b) any release or amendment or waiver of, or consent to departure from, any other guaranty or support document, or any exchange, release or nonperfection of any collateral, for all or any of the Transaction Documents or Liabilities; (c) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure or otherwise affect any term of any Transaction Document or Liability; (d) without being limited by the foregoing, any lack of validity or enforceability of any Transaction Document or Liability of any failure to receive any governmental approval relating thereto; (e) any other defense whatsoever that might constitute a defense available to, or discharge of, the New Borrower or a guarantor (including, without limitation, the bankruptcy or reorganization of the New Borrower).

***2008 Guaranty***, Section 2.

101.    Pursuant to Section 3 of the 2008 Guaranty, it "is a continuing guaranty and shall remain in full force and effect until payment in full of all Liabilities and other amounts payable under this Guaranty and until the Transactions are no longer in effect. ***2008 Guaranty***, Section 3.

102.    According to Section 11 of the 2008 Guaranty, the "remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law." ***2008 Guaranty***, Section 11.

103.    Pursuant to Section 13 of the 2008 Guaranty, "Guarantor waives presentment, notice of dishonor, protest, notice of acceptance of this Guaranty or incurrence of any Liability and any other formality with respect to any of the Liabilities of this Guaranty." *2008 Guaranty*, Section 13.

104.    According to Section 14 of the 2008 Guaranty, "[n]o failure on the part of the Bank to exercise, and no delay in exercising, any rights under this Guaranty shall operate as a waiver or preclude any other or further exercise thereof or the exercise of any other right." *2008 Guaranty*, Section 14.

105.    Pursuant to Section 15 of the 2008 Guaranty, "Guarantor shall reimburse the Bank on demand for all costs, expenses and charges, including without limitation fees and charges of legal counsel, for the Bank in connection with the performance or enforcement of this Guaranty." *2008 Guaranty*, Section 15.

106.    According to Section 18 of the 2008 Guaranty, the 2008 Guaranty "SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES." *2008 Guaranty*, Section 18 (Capitalization in Original).

107.    Section 18 also states "THE GUARANTOR IRREVOCABLY CONSENTS TO THE NONEXCLUSIVE JURISDICTION AND VENUE OF THE STATE OR FEDERAL COURTS LOCATED IN THE CITY OF NEW YORK." *2008 Guaranty*, Section 18 (Capitalization in Original).

108.    Pursuant to Section 19 of the 2008 Guaranty, "[e]ach Guarantor shall be severally as well as jointly liable hereunder …". *2008 Guaranty*, Section 19.

109.    No formal demand or notice is required under the 2008 Guaranty.

110.    The term "New Borrower" as used in the 2008 Guaranty refers to Equilibrium.

111.    Notwithstanding that no demand or notice is required under the 2008 Guaranty, by the Default and Demand Letter, Chang Hwa Bank NY Branch, through its counsel, notified Defendant Tien of: (i) Equilibrium's non-payment of the Loans, and (ii) Equilibrium's default under the Loan Agreements and Notes.

112.    By that same Default and Demand Letter, Chang Hwa Bank NY Branch, through its counsel, demanded Defendant Tien, jointly with or severally from Equilibrium and other guarantors, to immediately pay the Entire Indebtedness no later than January 4, 2011.

113.    Notwithstanding the Default and Demand Letter, no payment was received by Chang Hwa Bank NY Branch from or for Marvin Tien on January 4, 2011 or at any time thereafter.

114.    Defendant Tien has breached the 2008 Guaranty and defaulted on his obligations under the 2008 Guaranty by failing to pay the Entire Indebtedness, and remain in default as of the date hereof.

115.    As of the date of this Complaint, Defendant Tien, as the Guarantor, owes and is liable to Plaintiff Chang Hwa Bank NY Branch for the following sums under and pursuant to the 2008 Guaranty, plus $315.44 for each day after December 13, 2013:

| | |
|---|---|
| Total Outstanding Principal Balance for the Loans: | $1,363,750.00 |
| Total Unpaid Interest for the Loans: | $11,205.40 |
| Total Late Charges for the Loans: | $1,526.26 |
| Default Interest for the Loans calculated to | $391,058.31 |

and including December 13, 2013:

| | |
|---|---|
| Unpaid Amendment Fee from the 2010 Letter Agreement | $1,100.00 |
| **TOTAL:** | **$1,768,639.97** |

116.    By reason of the foregoing, Plaintiff Chang Hwa Bank NY Branch is entitled to a judgment against Defendant Marvin Tien in the sum of $1,768,639.97 plus default interest at the per diem rate of $315.44 for each day accruing for each day after December 13, 2013, together with all costs and expenses, including attorneys' fees, incurred by Chang Hwa Bank NY Branch in connection with the collection of any sums due to Chang Hwa Bank NY Branch and the enforcement of its rights under the Loan Agreements and Notes, and the 2008 Guaranty .

## AS AND FOR A THIRD CAUSE OF ACTION
## (BREACH OF THE 2009 GUARANTY)

117.    Plaintiff Chang Hwa repeats and realleges paragraph 1 through 116 above with the same force and effect as if the allegation plead therein are separately plead and set forth hereinafter in full and at length.

118.    As consideration and to induce Chang Hwa Bank NY Branch to enter into the 2009 Term Loan Agreement and make the loans therein, Defendant Tien made, executed and delivered the 2009 Guaranty in favor Chang Hwa Bank NY Bank.

119.    Pursuant to Section 1 of the 2009 Guaranty, Defendant Marvin Tien, as the GUARANTOR:

> … unconditionally and irrevocably guarantees to the Bank [CHANG HWA] … as primary obligor and not merely as surety, the punctual payment of all sums now owing or that may in the future be owing by the Borrower with respect to the Transactions, when the same are due and payable, whether on demand, at stated maturity, by acceleration or otherwise, and whether for principal, interest, purchase price, margin or

additional payments, fees, expenses, costs of replacement transactions, indemnification or otherwise (all of the foregoing sums being the "Liabilities"). The Liabilities include, without limitation, interest accruing after the commencement of a proceeding under bankruptcy, insolvency or similar laws of any jurisdiction at the rate or rates provided in the Transaction Documents. This Guaranty is a guaranty of payment and not of collection only. The Bank shall not be required to exhaust any right or remedy or take any action against the Borrower or any other person or entity or collateral.

***2009 Guaranty***, Section 1.

120.    The term "Transaction" in the 2009 Guaranty, and what Defendant Tien agreed to guarantee included, but not limited to, "… agreements or arrangements with, providing for credit extensions or financial accommodations to the Borrower of any kind whatsoever, including but not limited to the making of loans, advances or overdrafts, whether or not secured, discount or purchase of notes, securities or other instruments or property, creation of acceptance, issuance or confirmation of letters of credit, guaranties or indemnities, entering into foreign exchange or precious metals contracts or interest rate or currency swaps or protective agreements or any other kind or contract or agreements under which the Borrower may be indebted to the Bank in any manner…". ***2009 Guaranty***, p.1.

121.    Section 2 of the 2009 Guaranty provides that

The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of: (a) any change n the time, manner or place of payment, of or in any other terms o, all or any of the Transaction Documents or Liabilities, or any other amendment or waiver of or any consent to departure from any of the terms of any Transaction Document or Liability; (b) any release or amendment or waiver of, or consent to departure from, any other guaranty or support document, or any exchange, release or nonperfection of any collateral, for all or any of the Transaction Documents or Liabilities; (c) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure or otherwise affect any term of any Transaction Document or Liability; (d) without being limited by the foregoing, any lack of validity or enforceability of any Transaction Document or Liability of any failure

to receive any governmental approval relating thereto; (e) any other defense whatsoever that might constitute a defense available to, or discharge of, the Borrower or a guarantor (including, without limitation, the bankruptcy or reorganization of the Borrower).

*2009 Guaranty*, Section 2.

122.    Pursuant to Section 3 of the 2009 Guaranty, it "is a continuing guaranty and shall remain in full force and effect until payment in full of all Liabilities and other amounts payable under this Guaranty and until the Transactions are no longer in effect. *2009 Guaranty*, Section 3.

123.    According to Section 11 of the 2009 Guaranty, the "remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law." *2009 Guaranty*, Section 11.

124.    Pursuant to Section 13 of the 2009 Guaranty, "Guarantor waives presentment, notice of dishonor, protest, notice of acceptance of this Guaranty or incurrence of any Liability and any other formality with respect to any of the Liabilities of this Guaranty." *2009 Guaranty*, Section 13.

125.    According to Section 14 of the 2009 Guaranty, "[n]o failure on the part of the Bank to exercise, and no delay in exercising, any rights under this Guaranty shall operate as a waiver or preclude any other or further exercise thereof or the exercise of any other right." *2009 Guaranty*, Section 14.

126.    Pursuant to Section 15 of the 2009 Guaranty, "Guarantor shall reimburse the Bank on demand for all costs, expenses and charges, including without limitation fees and charges of legal counsel, for the Bank in connection with the performance or enforcement of this Guaranty." *2009 Guaranty*, Section 15.

127.    According to Section 18 of the 2009 Guaranty, the 2009 Guaranty "SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES." *2009 Guaranty*, Section 18 (Capitalization in Original).

128.    Section 18 also states "THE GUARANTOR IRREVOCABLY CONSENTS TO THE NONEXCLUSIVE JURISDICTION AND VENUE OF THE STATE OR FEDERAL COURTS LOCATED IN THE CITY OF NEW YORK." *2009 Guaranty*, Section 18 (Capitalization in Original).

129.    Pursuant to Section 19 of the 2009 Guaranty, "[e]ach Guarantor shall be severally as well as jointly liable hereunder …". *2009 Guaranty*, Section 19.

130.    No formal demand or notice is required under the 2009 Guaranty.

131.    The term "Borrower" as used in the 2009 Guaranty refers to Equilibrium.

132.    Notwithstanding that no demand or notice is required under the 2009 Guaranty, by the Default and Demand Letter, Chang Hwa Bank NY Branch, through its counsel, notified Defendant Tien of: (i) Equilibrium's non-payment of the Loans, and (ii) Equilibrium's default under the Loan Agreements and Notes.

133.    By that same Default and Demand Letter, Chang Hwa Bank NY Branch, through its counsel, demanded Defendant Tien, jointly with or severally from Equilibrium and other guarantors, to immediately pay the Entire Indebtedness no later than January 4, 2011.

134.    Notwithstanding the Default and Demand Letter, no payment was received by Chang Hwa Bank NY Branch from or for Marvin Tien on January 4, 2011 or at any time thereafter.

135. Defendant Tien has breached the 2009 Guaranty and defaulted on his obligations under the 2009 Guaranty by failing to pay the Entire Indebtedness, and remain in default as of the date hereof.

136. As of the date of this Complaint, Defendant Tien, as the Guarantor, owes and is liable to Plaintiff Chang Hwa Bank NY Branch for the following sums under and pursuant to the 2009 Guaranty, plus $315.44 for each day after December 13, 2013:

| | |
|---|---|
| Total Outstanding Principal Balance for the Loans: | $1,363,750.00 |
| Total Unpaid Interest for the Loans: | $11,205.40 |
| Total Late Charges for the Loans: | $1,526.26 |
| Default Interest for the Loans calculated to and including December 13, 2013: | $391,058.31 |
| Unpaid Amendment Fee from the 2010 Letter Agreement | $1,100.00 |
| **TOTAL:** | **$1,768,639.97** |

137. By reason of the foregoing, Plaintiff Chang Hwa Bank NY Branch is entitled to a judgment against Defendant Marvin Tien in the sum of $1,768,639.97 plus default interest at the per diem rate of $315.44 for each day accruing for each day after December 13, 2013, together with all costs and expenses, including attorneys' fees, incurred by Chang Hwa Bank NY Branch in connection with the collection of any sums due to Chang Hwa Bank NY Branch and the enforcement of its rights under the Loan Agreements and Notes, and the 2009 Guaranty.

## DEMAND

**WHEREFORE**, Plaintiff Chang Hwa Bank NY Branch hereby demands judgment in favor of Chang Hwa Bank NY Branch and against Defendant Tien as follows:

a.  On the First Cause of Action in the sum of $1,768,639.97 plus default interest at the per diem rate of $315.44 for each day accruing for each day after December 13, 2013, together with all costs and expenses, including attorneys' fees, incurred by Chang Hwa Bank NY Branch in connection with the collection of any sums due to Chang Hwa Bank NY Branch and the enforcement of its rights under the Loan Agreements and Notes, and the 2006 Guaranty; and

b.  On the Second Cause of Action in the sum of $1,768,639.97 plus default interest at the per diem rate of $315.44 for each day accruing for each day after December 13, 2013, together with all costs and expenses, including attorneys' fees, incurred by Chang Hwa Bank NY Branch in connection with the collection of any sums due to Chang Hwa Bank NY Branch and the enforcement of its rights under the Loan Agreements and Notes, and the 2008 Guaranty; and

c.  On the Third Cause of Action in the sum of $1,768,639.97 plus default interest at the per diem rate of $315.44 for each day accruing for each day after December 13, 2013, together with all costs and expenses, including attorneys' fees, incurred by Chang Hwa Bank NY Branch in connection with the collection of any sums due to Chang Hwa Bank NY Branch and the

enforcement of its rights under the Loan Agreements and Notes, and the 2009

Guaranty; and

for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 13, 2013

            STEWART W. LEE
            Gottesman, Wolgel, Malamy,
            Flynn & Weinberg, P.C.
            11 Hanover Square
            New York, New York 10005
            Tel.: (212) 495-0100
            E-Mail: slee@gottesmanlaw.com

            *Attorneys for Plaintiff*
            *Chang Hwa Commercial Bank Ltd.*
            *New York Branch*